IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | No.   07-3079 |
| | : | |
| CITY OF EASTON et al. | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                    **March 9, 2009**

      Scottsdale Insurance Company asks this Court for a declaratory judgment that it has no obligation to defend or indemnify its insured, the City of Easton, in a civil rights suit brought by the widow of a police officer.  Because I find the plain language of the policy requires Scottsdale to defend and indemnify Easton in federal civil rights actions, I will deny Scottsdale's motion for summary judgment.

**FACTS**

      The City of Easton purchased a Public Entity Insurance Policy from Scottsdale Insurance Company for the year 2004 to 2005, covering Law Enforcement Liability – Occurrence Coverage. The Policy covers "all 'loss' resulting from 'law enforcement wrongful act(s)' which arise out of and are committed during the course and scope of 'law enforcement activities' or which arise out of the ownership, maintenance or use of premises by you for the purpose of conducting 'law enforcement activities.'" Policy, Section I, ¶ 1.

      The policy defines law enforcement activities as "a. [t]hose activities conducted by your Law Enforcement Department or Agency shown in the Law Enforcement Liability Coverage Part

1

Supplemental Declarations; and b. Departmentally approved activities which are declared in the application for this insurance." Policy, Section VI, ¶ 4. A Law Enforcement Wrongful Act is defined as "any actual or alleged act, error or omission, neglect or breach of duty by the insured while conducting 'law enforcement activities' which results in: a. "personal injury"; b. "bodily injury"; or c. "property damage"; caused by an 'occurrence.'" Policy, Section VI, ¶ 5. Paragraph eight defines an occurrence as "an event, including continuous or repeated exposure to substantially the same generally harmful conditions." Policy, Section VI, ¶ 8. Personal injury includes "violation of civil rights protected under 42 U.S.C. § 1981 et sequential or State Law." Policy, Section VI, ¶ 9(g).

While this policy was in effect, one police officer, matthew Renninger, shot and killed a second officer, Jesse E. Sollman. Both were members of Easton's Special Weapons and Tactical Unit (SWAT). The Complaint in the underlying action alleges on Friday, March 25, 2005, the SWAT team attended a day-long training exercise. When they returned to their headquarters, the officers unloaded their weapons for cleaning in a second floor armory adjacent to a seven-by-10-foot cleaning room.[1] Officers Sollman, Renninger, and Robert Weber were in the cleaning room, cleaning firearms. Renninger left the cleaning room and re-loaded his H&K 40-caliber semi-automatic firearm in the locker room. He noticed a spot on the weapon and carried his loaded weapon, with the safety mechanism switched off, into the cleaning room. Renninger switched on the safety mechanism, cleaned the spot, released the safety mechanism, and turned to leave the room. As he did so, the gun discharged less than three inches from Sollman's back. The bullet

---

[1] There was no safety barrel in the cleaning room. There may have been a safety barrel in the armory room, but no one routinely used the barrel when loading or unloading weapons.

2

killed Sollman instantly, piercing his spleen, liver, and aorta.

A grand jury empaneled to investigate the death concluded:

> Sollman's death was the result of the cumulative effect of the following: the deficiency of the firearm safety facilities; the absence of appropriate firearm safety standards; the failure of the Easton Police Department command structure to establish and enforce safety standards and procedures; and, the series of negligent actions by Officer Renninger.

Pl.'s Compl. ¶ 33.

Sollman's widow filed suit against Renninger, other individual officers, police supervisors, city officials, and the City of Easton on March 25, 2007. Four months later, Scottsdale filed this action asking this Court to declare it has no duty to defend or indemnify in the underlying action. The case is now before me on Scottsdale's motion for summary judgment[2] which is opposed by the City, Renninger, and Sollman.[3]

**DISCUSSION**

The Declaratory Judgments Act provides that a court "May declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. s 2201. Granting or denying a declaratory judgment is discretionary. *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). The Court must consider: "(1) the likelihood that the declaration will resolve

---

[2]"Disposition of an insurance action on summary judgment is appropriate, when, as here, there are no material underlying facts in dispute." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360 (3d Cir. 2004) (citation omitted). "The interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court, a question over which this court exercises plenary review." *Liberty Mut. Ins. Co. v. Treesdale, Inc.* 418 F.3d 330, 333 (3d Cir. 2005).

[3]This Court dismissed counts against individual defendants the late Timothy Lambert, Robert Weber, Steven Mazzeo, and John Mazzeo in the underlying case, and Scottsdale has agreed to their dismissal in this case.

3

the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies." *Bituminous Coal Operators' Ass'n, Inc. v. Inter'l Union, United Mine Workers of America*, 585 F.2d 586, 596 -97 (3d Cir. 1978), *abrogated on other grounds by Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, (1979).

Because a decision in this case would resolve the question of whether the City or Scottsdale is liable to pay for any defense or damages imposed in the underlying case, I find a decision will resolve an underlying uncertainty, aid the parties in their underlying litigation, serve the public interest, and is the most convenient remedy to the uncertainty. I turn then to the contract itself.

Under Pennsylvania choice of law rules, an insurance contract is governed by the law of the state in which the contract was made. *Crawford v. Manhattan Life Ins. Co.*, 221 A.2d 877, 880 (Pa. Super. Ct. 1966). In this case, Pennsylvania substantive law applies. *Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 163 (3d Cir. 2006).

Under Pennsylvania law, a court, rather than a jury, interprets the language of an insurance contract. *Standard Venetian Blind Co. v. American Empire Ins., Co.*, 469 A.2d 563, 566 (Pa. 1983). The goal of insurance contract interpretation is to "ascertain the intent of the parties as manifested by the language of the policy." *Visiting Nurse Ass'n v. St. Paul Fire & Marine Ins.*, 65 F.3d 1097, 1100 (3d Cir.1995). Where the language of an insurance policy is clear and unambiguous, it must be given its plain and ordinary meaning. *12th Street Gym, Inc. v. General Star Indem. Co.*, 93 F.3d 1158, 1165 (3d Cir. 1996).

When I consider the language of the policy in question, I have no trouble concluding the intent of the parties was that Scottsdale would insure the City against any civil rights suit arising

from law enforcement activities. The underlying case alleges a loss which arises from the "ownership, maintenance or use of premises by you for the purpose of conducting law enforcement activities." Policy, Section I, ¶ 1. The shooting occurred during weapons training for the SWAT team, a sanctioned law enforcement activity.

The Policy's coverage is described as "Law Enforcement Liability Coverage." The policy excludes "injuries arising out of and in the course of employment by the insured." The phrase "in the course of employment" is black letter worker's compensation law. 77 P.S. § 411 (covering "an injury to an employe . . . arising in the course of his employment and related thereto"); *see Panyko v. W.C.A.B. (U.S.Airways)*, 888 A.2d 724, 738 (Pa. 2005). The repetition of worker's compensation language defines the exclusion as limiting Scottsdale's coverage to suits other than worker's compensation claims. The policy states it covers civil rights claims arising out of law enforcement activities. Sollman has brought a civil rights claim arising out of a police department activity within the police department premises. Any Worker's Compensation claim is outside the scope of the case underlying this action. Under the plain language of the policy, I find the underlying case falls within Scottsdale's obligation to indemnify the City.

The second question presented is whether Scottsdale is obligated to defend the City in the underlying action. The Policy states Scottsdale "will have the right and duty to defend any 'suit' against the insured even if any of the allegations of the 'suit' are groundless, false or fraudulent." Policy, Section I, ¶ 2.

Under Pennsylvania law, an insurer has a duty to defend if the complaint filed by the injured party potentially comes within the policy's coverage. *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985). The duty to defend is a distinct obligation, different from and broader than the duty

to indemnify. *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 925 (Pa. Super. Ct. 2004). Both the duty to defend and the duty to indemnify "flow from a determination that the complaint triggers coverage." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225-26 (3d Cir. 2005). After determining the scope of coverage under a policy, the court must examine the complaint in the underlying action to determine whether it triggers coverage. *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (1997).

When I look at the Complaint in the underlying action, I find Sollman has sued the City, Renninger, and the City supervisors under 42 U.S.C. § 1983 alleging substantive due process violations, supervisor liability, and a *Monell*[4] claim as well as several state tort counts. The section 1983 and *Monell* claims are civil rights claims. As such, Scottsdale has undertaken to defend and potentially indemnify the City for any award in the underlying case.

An appropriate order follows.

---

[4]*Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) (holding "when execution of a government's policy or custom . . . inflicts the injury[,] . . . the government as an entity is responsible under § 1983").